UNITED STATES *v.* BROWN & ROESE (No. 2373).[1]

CONSTRUCTION, SECTION 403, EMERGENCY TARIFF ACT OF 1921—DATE OF INSTITUTION—CURRENCY CONVERSION.

Paragraph (b), of section 403, Title IV, emergency tariff act of 1921, directs that the new method of currency conversion established by the section shall apply to importations made on or after the day of the enactment of the act. The act was approved May 27, 1921, and this provision applies to the merchandise at bar, which was imported on that date. Note that there is no proof in this record as to whether the importation was made before or after the approval.

United States Court of Customs Appeals, February 17, 1925

Appeal from Board of United States General Appraisers, Abstract 46695

[Reversed.]

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Ralph Folks,* special attorneys, of counsel) for the United States.
*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellants.

[Oral argument Jan. 14, 1925, by Mr. Lawrence and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The only question in this case is as to the conversion of the foreign currency of an invoice of merchandise imported and entered May 27, 1921, into the currency of the United States. Its determination depends upon the interpretation to be given to certain provisions of section 403 of Title IV of the act of May 27, 1921.

The relevant parts of said section are as follows:

SEC. 403. (a) That section 25 of the act of August 27, 1894, entitled "An act to reduce taxation, to provide revenue for the Government, and for other purposes," is amended to read as follows: ,

"SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the first day of January, April, July, and October in each year."

(b) For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this Act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary under the provisions of section 25 of such act of August 27, 1894, for the quarter in which the merchandise was exported.

---

[1] T. D. 40696.

(c) If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary, who shall make it public at such times and to such extent as he deems necessary. *   *   *

(e) Section 25 of such act of August 27, 1894, as in force prior to the enactment of this act, and section 2903 of the Revised Statutes, shall remain in force for the assessment and collection of duties on merchandise imported into the United States prior to the day of the enactment of this act.

This case is here upon an appeal by the Government from the judgment of the Board of General Appraisers sustaining the importers' protest, claiming that the conversion of the currency in this case should have been made at the rate certified by the consul on the invoice instead of the rate adopted by the collector, which was that determined by the Federal Reserve Bank of New York and certified to the Secretary of the Treasury under the foregoing quoted statute.

The material part of the collector's report upon which, so far as the facts are concerned, the case was submitted, states that duty was "assessed on the basis of the value determined from a conversion of the invoice foreign currency in the United States money at the Federal reserve bank rate for the date of exportation, from the foreign country of export, said rate varying more than 5 per cent from that proclaimed by the honorable Secretary of the Treasury for the standard coin."

The board followed its decision in G. A. 8593 (T. D. 39383), where a similar question was raised. Examination of the opinion in that case shows that it proceeded upon the theory that the act of May 27 did not take effect until May 28, 1921, which conclusion the board stated seemed "to be conceded by both sides." The merchandise in that case having been imported May 27, 1921, it held that, as to the conversion of the foreign currency of the invoice, the provisions of the act of May 27 were not applicable.

In this case no such concession is made and the question standing for decision is whether said paragraphs (b) and (c), for the purpose of the conversion of the foreign currency of an invoice, were in effect on the 27th day of May, 1921.

It will be noted that paragraph (b) relates to merchandise imported *on* or *after* the day of the enactment of the act.

It is unnecessary to enter into an elaborate discussion of this question. An examination of the act shows that it covers various subjects, such as the imposition of temporary duties, the regulation of commerce with foreign countries, the prevention of the dumping of merchandise therefrom on the markets of this country, and the regulation of the value of foreign money.

The act is divided into five titles, with provisions that certain ones shall be cited as if they were different and independent acts.

Title I provides that on and after the date following the passage of the act, for the period of six months, certain duties shall be levied, collected, and paid. Title V contains language equally specific. There are also definite and certain limitations in some of the titles as to the time during which the same shall be in effect.

Like care was exercised in respect to the provisions of said paragraphs (b) and (e). The former, as already pointed out, provides that it shall apply to merchandise imported *on* or *after* the day of the enactment; the latter that it shall be applicable to merchandise imported *prior* thereto.

All this indicates that Congress clearly intended to declare in paragraph (b) that the currency conversion provision should apply to merchandise imported *on* as well as *after* the day of enactment.

The act was approved May 27, 1921, and section 403 thereof was, therefore, on that date enacted and in effect.—Arnold *v.* United States (13 U. S. (9 Cr.) 103); Gardner *v.* The Collector (73 U. S. 499); Lapeyre *v.* United States (84 U. S. 191); Burgess *v.* Salmon (97 U. S. 381).

The merchandise having been imported on that day comes within the explicit provision of paragraphs (b) and (c) for the conversion of the currency of the invoice and the collector properly applied the same.

It should be noted that there is no showing either as to the precise hour of the day on which the merchandise was imported or the statute approved, and there is no claim that the importation was actually made before the statute was, in fact, approved, which has been held to be important of consideration in certain cases.—Louisville *v.* Savings Bank (104 U. S. 469); United States *v.* Stoddard et al. (89 Fed. 699).

The judgment of the Board of General Appraisers is *reversed.*